**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Audrey Elizabeth Starr,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-20-01673-PHX-MTL<br><br>**ORDER** |

At issue is the denial of Plaintiff Audrey Elizabeth Starr's Application for Disability Insurance Benefits and Supplemental Security Income Benefits by the Social Security Administration. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 24, "Pl. Br."), Defendant's Answering Brief (Doc. 25, "Def. Br."), and Plaintiff's Reply Brief (Doc. 29, "Reply"). The Court has reviewed the briefs and the Administrative Record (Doc. 16, "R.") and now affirms the Administrative Law Judge's decision.

**I.   BACKGROUND**

Plaintiff filed her application for Disability Insurance Benefits and Supplemental Security Income Benefits on October 25, 2016, alleging disability beginning March 27, 2015 caused by various mental health impairments. (R. at 30.) This is Plaintiff's second application for benefits; Plaintiff previously filed an application for a period of Disability Insurance Benefits and Supplemental Security Income Benefits on April 4, 2012. (*Id.*) That application was denied by an Administrative Law Judge ("ALJ") on March 26, 2015

("2015 ALJ Decision") and remains final and binding. (*Id.*) In that 2015 ALJ Decision, the ALJ found that, despite Plaintiff's severe impairments, she had the residual functional capacity to perform a full range of work within certain limitations and that there were a significant number of jobs in the national economy Plaintiff could perform. (R. at 118–131.)

With respect to the present application, the Commissioner denied Plaintiff's application initially and again upon reconsideration. (*Id.*) Plaintiff then appeared and testified at a hearing before an ALJ on June 11, 2019. (*Id.*) The ALJ considered whether Plaintiff is disabled under Sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act. (*Id.*) After applying the five-step sequential evaluation, the ALJ determined at Step 4 and Step 5 that Plaintiff does not have an impairment that meets one of the listed impairments in 20 C.F.R. Part 404, and in light of all of her symptoms and the medical opinion evidence, the Plaintiff has residual functional capacity to perform at all exertional levels with some nonexertional limitations. (*Id.* at 35–36.) In making this determination, the ALJ considered Plaintiff's age, education, work, experience, and opinion evidence. (*Id.*) Accordingly, the ALJ issued a written decision finding Plaintiff not disabled. (*Id.* at 31.) On June 23, 2020, the Appeals Council denied review, making the ALJ's decision final and ripe for this Court's review. (*Id.* at 1.) Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

The pertinent medical evidence will be discussed in addressing the issues raised by Plaintiff. Upon considering the medical records and opinions, the ALJ found Plaintiff has "severe" medically determinable impairments of chronic migraines secondary to Chiari malformation, major depressive disorder, post-traumatic stress disorder ("PTSD"), generalized anxiety disorder, pain disorder, and borderline personality disorder. (*Id.* at 34.)

The ALJ found that Plaintiff has not engaged in substantial gainful activity since March 27, 2015. (*Id.*) However, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with certain nonexertional limitations. (*Id.* at 36.) Specifically, the ALJ noted that Plaintiff is "limited

to understanding, remembering, and carrying out short and simple instructions." (*Id.*) The ALJ further found that Plaintiff can only make simple work-related judgments, have only occasional changes in a routine work setting, and have no more than occasional proximal or interactive contact with the public, coworkers, or supervisors. (*Id.*) The ALJ emphasized that although Plaintiff cannot perform fast-pace work, she can perform goal-oriented work. (*Id.*) The ALJ also highlighted that despite Plaintiff's impairments, she "continues to engage in a somewhat normal level of daily activity and interaction," such as performing household chores, shopping for groceries, and taking care of her son. (*Id.* at 38.) Thus, the ALJ concluded Plaintiff has not been disabled since March 27, 2015. (*Id.* at 43.)

## II.  LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the

1 claimant has a "severe" medically determinable physical or mental impairment. *Id*. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id*. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. If not, the ALJ proceeds to step four. *Id*. At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id*. If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id*. If not, the claimant is disabled. *Id*.

### III. DISCUSSION

Plaintiff raises three claims of error. First, Plaintiff argues that the ALJ erred by finding that Plaintiff did not overcome the presumption of non-disability. (Pl. Br. at 21.) Second, Plaintiff argues that the ALJ misevaluated the medical opinions of examining physician Dr. Brent Geary and licensed professional counselor ("LPC") Gail Newman. (*Id.* at 23, 28.) Finally, Plaintiff argues that the ALJ committed legal error by rejecting her symptom testimony. (*Id.* at 31.) The Court addresses each argument in turn.

#### A. Presumption of Non-Disability

Plaintiff first claims that the ALJ committed materially harmful error by adopting the 2015 ALJ's determination of Plaintiff's medical capacities. (Pl. Br. at 21). Plaintiff argues that her treatment records show changed circumstances sufficient to overcome the presumption of non-disability arising from the 2015 ALJ Decision. (*Id.*) Defendant responds that there was insufficient evidence to establish changed circumstances and Plaintiff therefore remains presumptively not disabled. (Def. Br. at 7–8.)

A binding determination of non-disability creates a presumption of continuing non-disability. *See Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995). The presumption does

not apply, however, if there are "changed circumstances." *See Taylor v. Heckler*, 765 F.2d 872, 875 (9th Cir. 1985). A "change of circumstance" may pertain to age, alleged existence of new impairments, increased severity of impairments, or a change in the criteria for determining disability. *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988); *Vasquez v. Astrue*, 572 F.3d 586, 597 (9th Cir. 2009); *Lester*, 81 F.3d at 827–828. A claimant can demonstrate "[c]hanged circumstances" with new facts establishing a previously unlitigated impairment or other apparent error in the prior determination. *See Lester*, 81 F.3d at 827–828.

Here, the ALJ properly determined that there was insufficient evidence to justify a finding of changed circumstances based on Plaintiff's alleged increased severity in her existing mental impairment. (R. at 33–34.) In making this determination, the ALJ considered the fact that Plaintiff had been designated as "seriously mentally ill" by the State shortly after the 2015 ALJ Decision. (*Id.*) Nevertheless, the ALJ determined that Plaintiff's classification as "seriously mentally ill" by the State of Arizona was not determinative in finding a change of circumstances in the present action. (*Id.*) Plaintiff was hospitalized shortly after the 2015 ALJ Decision for increased suicidal ideation. (R. at 636.) But even before the 2015 ALJ Decision, Plaintiff had experienced suicidal ideation prior to her designation as seriously mentally ill. (R. at 61–62). The 2015 ALJ Decision considered this evidence and determined it did not qualify Plaintiff for a disability determination. (*Id.* at 34–35.) In the present case, Plaintiff alleges increased suicidal ideation, but the medical evidence does not reflect such a substantial change in her condition to overcome the presumption that Plaintiff was not disabled. (*Id.*) *See Lester*, 81 F.3d at 827. Because Plaintiff has not presented sufficient evidence to demonstrate changed circumstances, Plaintiff fails to carry her burden of proof in overcoming the presumption of continued non-disability. *Taylor*, 765 F.2d at 875. As such, the Court is satisfied that the ALJ provided a legitimate reason, supported by relevant medical evidence, for finding that there were not changed circumstances and Plaintiff therefore remains presumptively not disabled.

### B. Medical Opinion Evidence

Plaintiff argues the ALJ improperly rejected the medical opinion evidence of Dr. Brent Geary and LPC Gail Newman without providing specific and legitimate reasons. (Pl. Br. at 23–28.) Defendant responds that the ALJ properly discounted Dr. Geary's opinion as inconsistent, and the ALJ correctly identified LPC Newman as an "other source" and therefore need only give germane reasons for rejecting the assessment. (Def. Br. at 8–9.)

#### 1. Legal Standard

In assessing a claimant's RFC, the ALJ considers all of the relevant medical and other evidence, including medical opinion evidence. 20 C.F.R. § 404.1545(a)(3); *see* 20 C.F.R. § 404.1527. In general, medical opinions of treating sources are entitled to the greatest weight; opinions of examining, non-treating sources are entitled to lesser weight; and opinions of non-examining, non-treating sources are entitled to the least weight. *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Medical opinions and conclusions of treating physicians are accorded special weight because of the unique relationship and continuity of dealings with the claimant, which enhances their ability to assess the claimants' problems. *See Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988); *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987).

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012. An ALJ satisfies the substantial evidence requirement by "setting out a detailed and thorough summary of the facts and conflicting evidence, stating his [or her] interpretation thereof, and making findings." *Id.* "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. In evaluating any medical opinion, the ALJ may consider: (1) whether the source examined the claimant; (2) the length, frequency, nature, and extent of any treatment relationship; (3) the degree of support the opinion has from objective medical evidence; (4) the consistency of the opinion

with the record as a whole; (5) the source's specialization; and (6) "other factors." 20 C.F.R. §§ 416.927(c)(1)–(6); *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).

The ALJ must provide specific, legitimate reasons based on substantial evidence in the record for rejecting the opinion of a treating or examining physician. *See Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 741, 751–755 (9th Cir. 1989). The ALJ may disregard a medical opinion that is brief, conclusory, and inadequately supported by clinical findings. *Britton v. Colvin*, 787 F.3d 1011, 1012 (9th Cir. 2015) (per curiam).

### 2. Dr. Geary's Assessments

The ALJ considered the medical opinion of Dr. Geary, Ph.D., a licensed psychologist who saw Plaintiff at her attorney's request. (R. at 39.) The ALJ gave "little weight" to Dr. Geary's assessment, reasoning that he was not a treating source, and that his report was prepared specifically for litigation. (*Id.*) Dr. Geary's assessment found that Plaintiff had impairments that would preclude an eight-hour workday. (*Id.* at 2029.) Despite this conclusion, Dr. Geary found Plaintiff to be "intellectually capable," noting her satisfactory eye contact, attention span, and polite demeanor. (*Id.* at 39–40.)

The ALJ properly rejected Dr. Geary's finding that Plaintiff could not work. (R. at 39.) The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability and need not credit a physician's conclusion that the claimant is "disabled" or "unable to work." 20 C.F.R. § 404.1527(d)(1). Given that the ALJ may properly disregard a conclusory medical opinion, the Court finds no error. *Britton*, 787 F.3d at 1012; *see Batson v Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (stating that the ALJ may permissibly reject conclusory medical opinions).

The Court similarly finds no error with respect to the ALJ's assignment of "little weight" to Dr. Geary's assessment. (R. at 39.) Inconsistency between a treating or examining physician's opinion and treatment notes can provide a specific, legitimate

reason for the ALJ to give a medical opinion less weight. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

Dr. Geary's conclusion that Plaintiff was not able to work varied from his treatment notes, which explained that despite social limitations, Plaintiff had satisfactory eye contact, adequate attention span, and normal motor level. (R. at 39.) Dr. Geary further noted that Plaintiff was polite, trustful, and demonstrated no difficulties with judgment. (*Id.*) Dr. Geary claimed no limitations on Plaintiff's ability to understand, carry out, or remember instructions. (R. at 2030.) Dr. Geary further found Plaintiff had only mild limitations pertaining to her ability to respond appropriately to supervision and perform simple tasks. (*Id.*) Similarly, Dr. Geary observed only moderate limitations regarding Plaintiff's ability to respond appropriately to coworkers. (*Id.*) Dr. Geary's assessment also highlights that Plaintiff scored a 29 out of 30 on a "Mini Mental Status Examination" and had an overall IQ in the upper third of the average range of intelligence classification. (R. at 2022–2026.)

These observations were in stark contrast with Dr. Geary's ultimate conclusion that Plaintiff was unfit to work. The objective medical evidence did not support the degree of limitations proposed by Dr. Geary's assessment and did not support his conclusory finding that Plaintiff could not maintain gainful employment. (R. at 39.)

Moreover, other assessments in the record diagnosed Plaintiff with dissociative identity disorder, also known as multiple personality disorder. (R. at 945, 645, 2028.) Dissociative identity disorder is a mental impairment described by Plaintiff as switching "between alternate personalities on a daily basis." (Pl. Br. at 18.) Dr. Geary's rejection of the dissociative disorder diagnosis directly conflicts with opinions proposed by other providers. (R. at 40.) While the ALJ could have been more specific in its opinion, the Court can reasonably infer why the ALJ assigned "little weight" to Dr. Geary's assessment. *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("Even when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned.") (internal quotations omitted).

Regarding the preparation of the assessment specifically for litigation, courts have

disagreed on the permissibility of considering the purpose for which medical reports are obtained. In *Lester v. Chater*, the court held that "[t]he purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them." *Lester*, 81 F.3d at 832. Other courts in this Circuit, however, have determined that an ALJ's consideration of an assessment solicited by claimant's counsel was a "permissible credibility determination." *Burkhart v. Bowen*, 856 F.2d 1335, 1339 (9th Cir. 1998).

### 3. Licensed Professional Counselor Newman's Assessments

The ALJ also considered medical assessments from LPC Newman, Plaintiff's treating counselor. (R. at 39.) The ALJ assigned "some weight" to LPC Newman's assessments, noting that although there appeared to be a long-lasting treating relationship with Plaintiff, LPC Newman's assessments were not an acceptable medical source. (*Id.*) The ALJ further reasoned that LPC Newman's ratings as to the severity of the claimant's limitations were not fully consistent with the overall record. (*Id.*)

The Court finds no error regarding the ALJ's decision to grant "some weight" to LPC Newman's assessments. "[O]nly licensed physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Molina*, 674 F.3d at 1111 (quoting 20 C.F.R. § 404.1513(a)). "Other medical sources" are not entitled to the same deference as acceptable medical sources; however, testimony of other sources may be used "to show the severity of . . . impairment(s) and how it affects [the] ability to work." 20 C.F.R. § 404.1513(d)(1); *see Dale v. Colvin*, 823 F.3d 941, 943 (9th Cir. 2016); *Britton*, 787 F.3d at 1013. As stated above, in deciding how much weight to give a medical opinion, the following factors are considered: (1) examining relationship; (2) length, nature, and frequency of relationship; (3) degree to which the opinion considers pertinent evidence; (4) consistency of the opinion with the overall record; and (5) whether the opinion comes from a specialist. 20 C.F.R. § 416.927(c). Nevertheless, an ALJ may discount the opinion of an "other source" if she provides reasons germane for doing so. *Popa v. Berryhill*, 872 F.3d 901, 906 (9th Cir. 2017).

Here, LPC Newman is considered an "other source" for the purposes of medical

testimony. As such, her opinion cannot be used to establish a medical impairment. The ALJ may therefore give less weight to LPC Newman's opinion by providing reasons germane for doing so. *Canales v. Comm'r of Soc. Sec. Admin.*, 468 Fed. Appx. 717, 720 (9th Cir. 2012). In determining what weight to give LPC Newman's opinion, the ALJ properly considered factors set forth in 20 C.F.R. § 416.927(c). The ALJ acknowledged the length and nature of the treatment relationship between Plaintiff and LPC Newman. In weighing the fact that LPC Newman saw Plaintiff on a weekly basis for two years, the ALJ recognized that "a treating relationship with the claimant that has lasted long enough to have obtained a longitudinal picture of the claimant's medical condition." (R. at 39.)

In further considering the factors set forth in 20 C.F.R. § 416.927(c), the ALJ explained that LPC Newman's assessment was "not fully consistent with the overall record." Such a finding is a sufficiently germane reason not to fully credit LPC Newman's opinion. *Canales*, 468 Fed. Appx. at 720. As this Court cannot substitute its judgment for that of the ALJ, the Court will not overturn the ALJ's finding that LPC Newman's opinion be given "some weight." *Batson*, 359 F.3d at 1196 ("When evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ.").

### 4. Plaintiff's Symptom Testimony

Plaintiff finally argues the ALJ improperly dismissed her subjective symptom testimony. (Pl. Br. at 31.) Plaintiff contends that the ALJ "failed to meet the stringent test that requires specific, clear, and convincing reasons for rejecting claimants' symptom testimony." (*Id.* at 39.) Defendant responds that "the ALJ appropriately found Plaintiff's subjective symptom testimony not properly supported by the record based upon the objective medical evidence, Plaintiff's treatment history, and her daily activities." (Def. Br. at 10.)

The ALJ must consider the claimant's subjective testimony when determining her RFC but need not necessarily credit that testimony. *See* 20 C.F.R. §§ 404.1545(a)(3), 404.1529(a). When deciding whether to credit a claimant's testimony, the ALJ must engage

in a two-step analysis. *Molina*, 674 F.3d at 1112. First, the ALJ "determine[s] whether there is 'objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). Then, the ALJ evaluates the statements in context of the (1) objective medical evidence and (2) other evidence in the record. *See* 20 C.F.R. § 404.1529(c)(2)-(3). The ALJ may only reject the claimant's testimony "by offering specific, clear and convincing reasons for doing so." *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler*, 775 F.3d at 1099.

Although the "clear and convincing standard is the most demanding required in Social Security cases," the ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Garrison*, 759 F.3d at 1015; *accord Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Thus, when weighing the claimant's credibility, the ALJ may consider "inconsistencies either in claimant's testimony or between [her] testimony and [her] conduct, claimant's daily activities, [claimant's] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains."[1] *Thomas*, 278 F.3d at 958–59. Additionally, the ALJ may consider "whether the claimant takes medication or undergoes other treatment for [her] symptoms." *Lingenfelter*, 504 F.3d at 1040; *see Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling."). The ALJ may also consider "whether the alleged symptoms are consistent with the medical evidence."[2] *Lingenfelter*, 504 F.3d at 1040.

---

[1] While the ALJ may consider "whether the alleged symptoms are consistent with the medical evidence," the ALJ may not "reject a claimant's subjective pain or symptom testimony simply because the alleged severity of the pain or symptoms is not supported by objective medical evidence." *Lingenfelter*, 504 F.3d at 1040.

[2] "[H]owever, an ALJ cannot reject a claimant's subjective pain or symptom testimony simply because the alleged severity of the pain or symptoms is not supported by objective

- 11 -

In assessing Plaintiff's symptoms, the ALJ considered testimony that Plaintiff had an "inability to work due to dissociated identity disorder, dissociated PTSD, personality disorder, bipolar disorder, and mood disorder." (R. at 38.) The ALJ further considered Plaintiff's testimony that she experienced symptoms of "crying spells, insomnia, memory loss, decreased concentration, night terrors, fatigue, frequent panic attack, anxiety, anorexia, isolation, increased depression, and mood swings." (*Id.*) The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause these alleged symptoms, thus satisfying step one of the analysis. (*Id.*)

At step two, however, the ALJ determined Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (*Id.*) To support this finding, the ALJ provided several reasons, including (1) the testimony was unsupported by the objective medical evidence in the record, (2) several of Plaintiff's symptoms showed improvement with medication, and (3) Plaintiff was engaging in daily activities inconsistent with her alleged symptoms. (*See id.* at 37–38.)

The ALJ properly discounted Plaintiff's symptom testimony by finding that her alleged functional limitations were not supported by objective medical evidence. An ALJ may consider, but not solely rely on, a lack of objective evidence to discredit the claimant's testimony. *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993). To address Plaintiff's complaints of "debilitating headaches, nausea, and vertigo" the ALJ noted her symptom testimony and compared it with the record's evidence. (R. at 38.) The ALJ dismissed these claims by explaining that Plaintiff's medical records suggest such symptoms are intermittent and do not require surgery. (*Id.*) The ALJ also emphasized that Plaintiff engages in a somewhat normal level of daily activity, such as running errands and driving a car, which demonstrates that Plaintiff's functional limitations do not rise to the level of severity claimed by Plaintiff. (*Id.*) The ALJ points to this evidence to highlight that Plaintiff is "more able-bodied than she alleges." (*Id.*) Although a lack of medical evidence in the

---

medical evidence." *Lingenfelter*, 504 F.3d at 1040 n.11.

record cannot on its own discount a Plaintiff's symptom testimony, it is a common factor the ALJ can consider when assessing credibility. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

The ALJ then refuted Plaintiff's assertions of certain mental impairments including hearing voices, having multiple personalities, misunderstanding the intentions of others, and having suicidal ideations. (R. at 37.) The ALJ noted that Plaintiff was described throughout the medical record as "well nourished, well developed, cooperative, pleasant, polite, calm, quiet, alert, oriented, stable, and in no acute distress." (*Id.* at 38.) The ALJ therefore did not err in discounting Plaintiff's testimony on account of a lack of corroboration from the objective medical evidence. *See Lingenfelter*, 504 F.3d at 1040.

Additionally, the ALJ properly discounted Plaintiff's symptom testimony because of the reported effectiveness of medication in reducing and controlling several of her symptoms. (R. at 38.) The ALJ found that Plaintiff's mental impairments had been controlled or improved with medication. (*Id.*) Social Security regulations allow ALJs to consider the effectiveness of medications taken to alleviate pain when evaluating the intensity and persistence of a claimant's subjective symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(iv). The ALJ pointed to treatment notes showing that Plaintiff takes medication and attends intensive therapy sessions to alleviate her symptoms. (*Id.*) In one report, Plaintiff's treating provider even stated that Plaintiff would likely be able to overcome her mental impairments "with hard work and continued support." (*Id.*) The ALJ therefore found that Plaintiff's mental impairments were being managed and should be controllable with adherence to recommended medical management and medication. (*Id.*)

Lastly, the ALJ discounted Plaintiff's symptom testimony on account of certain daily activities that were found inconsistent with her allegations of disability. (R. at 38.) Defendant argues that "Plaintiff's allegations about disabling symptoms and mental limitations were at odds with her admissions about her daily activities." (Def. Br. at 13.) This argument is persuasive. Overall, Plaintiff has maintained a somewhat normal level of activity and interaction. (R. at 38.) For example, the ALJ noted that Plaintiff completed

household chores, shopped for groceries, drove, prepared meals, tended to her pets, and used a computer. (*Id.*) The ALJ emphasized that Plaintiff's ability to participate in normal daily activities diminished the reliability of Plaintiff's claimed functional limitations. (*Id.*) The ALJ further explained that, despite illustrating "some functional deficits, they are not to the level of severity related by the claimant." (*Id.*) As noted, the Court cannot second-guess the ALJ's credibility finding if it is supported by substantial evidence in the record, even when the evidence is subject to more than one rational interpretation. *See Thomas*, 278 F.3d at 954.

Accordingly, Plaintiff's arguments pertaining to overcoming the presumption of non-disability, misevaluating medical opinions, and rejecting symptom testimony do not constitute a basis for remand.

### IV. CONCLUSION

Accordingly,

**IT IS ORDERED affirming** the August 5, 2019 decision of the Administrative Law Judge (R. at 26–51), as upheld by the Appeals Council (R. at 1–6).

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 21st day of October, 2021.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge